IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT FISHER,

      Plaintiff,                       No.  CIV S-05-1977 DAD

    v.

MICHAEL J. ASTRUE,                <u>ORDER</u>
Commissioner of Social Security,[1]

      Defendant.
_____/

        This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, the decision of the Commissioner of Social Security (Commissioner) is affirmed.

**PROCEDURAL BACKGROUND**

        On July 2, 2003, plaintiff Robert Fisher applied for Social Security Disability Insurance benefits under Title II and for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (Act). (Transcript (Tr.) at 70-72, 74-83.)

---

[1] On February 12, 2007, Michael J. Astrue became the Acting Commissioner of Social Security. Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

The Commissioner denied plaintiff's application initially and on reconsideration. (Tr. at 46-59.) Pursuant to plaintiff's request, a hearing was held before an administrative law judge (ALJ) on January 10, 2005, at which time plaintiff was represented by counsel. (Tr. at 22-43, 60.) In a decision issued on May 10, 2005, the ALJ determined that plaintiff was not disabled. (Tr. at 9-21.) The ALJ entered the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's chronic lumbago, hypertension, obesity, possible mild depression, and limited intellectual functioning are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404. 1520(c) and 416.920(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix I, Subpart P, Regulation No.4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity:  unskilled light work involving no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling; and no climbing of ladders, ropes, or scaffolds.

7. The claimant's past relevant work as chore worker did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR §§ 404.1565 and 416.965).

8. The claimant's impairments do not prevent the claimant from performing his past relevant work.

/////

/////

       9.      The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Tr. at 20-21.)

Plaintiff requested review of the ALJ's decision, but the Appeals Council declined review on August 8, 2005. (Tr. at 5-8.) Plaintiff then sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on September 29, 2005.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under the Social Security regulations. Title 20 of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is conclusively presumed disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff advances four arguments in his motion for summary judgment. First, he asserts that the ALJ erred at step two of the sequential evaluation by failing to consider all of plaintiff's impairments individually and in combination. Second, he contends that the ALJ erred at step three of the sequential evaluation by failing to find that plaintiff's impairments meet or equal the criteria under Listing 12.05, concerning mental retardation. Third, he maintains that

the ALJ erred at step four in finding he can perform his prior work as a chore worker.  Fourth, he argues that the ALJ erred at step five in not obtaining expert testimony from a vocational expert to determine what jobs plaintiff is capable of performing.

**I. Step Two:  Determination of Severe Impairments**

It is well established that at step two the ALJ must determine if the claimant has a medically severe impairment or combination of impairments.  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).  The purpose of step two of the sequential evaluation is merely to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account.  Yuckert, 482 U.S. at 153.  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  Smolen, 80 F.3d at 1290 (citations omitted).  See also 20 C.F.R. §§ 404.1521(a) and 416.921(a).

Here, plaintiff applied for disability benefits on the basis of chronic back pain, severe headaches, chest pain, and high blood pressure. (Tr. at 75.)  The ALJ determined that plaintiff is severely impaired due to chronic lumbago, hypertension, obesity, possible mild depression, and limited intellectual functioning. (Tr. at 20.)  Plaintiff argues that the ALJ erred by failing to identify and consider dozens of additional impairments from which he suffers.

Plaintiff's list of additional impairments consists almost entirely of the symptoms of, or limitations caused by, the five severe impairments found by the ALJ.  For example, plaintiff lists lumbar spasms.  "Lumbar" means "[o]f, near, or situated in the part of the back and sides between the lowest ribs and the pelvis."  Stedman's Medical Dictionary 475 (1995).  Plaintiff has not demonstrated that lumbar spasms constitute an impairment separate from chronic lumbago, which is "[a] painful condition of the lower back."  Stedman's Medical Dictionary 475 (1995).  The remainder of plaintiff's proposed additional impairments, with four exceptions, appear to be derived from the findings of Michelina Regazzi, Ph.D. in her 2005

psychological evaluation of plaintiff.  (Tr. at 160-64.)  Dr. Regazzi diagnosed depressive disorder and mild mental retardation (tr. at 164), and the ALJ found plaintiff impaired by possible mild depression and limited intellectual functioning, among other things (tr. at 20).  Plaintiff has not demonstrated that any individual symptom or limitation discussed by Dr. Regazzi constitutes an impairment distinct from the mild depression and limited intellectual functioning found by the ALJ.

The remaining impairments asserted by plaintiff are atypical chest pain, shortness of breath, headaches, and osteoarthritis involving the back, shoulders, and knees.  The ALJ found that plaintiff's infrequent headaches, which he treats with over-the-counter medication, did not interfere with plaintiff's ability to perform work-related tasks.  (Tr. at 15-16.)  Plaintiff has cited no evidence to the contrary.  The ALJ also found no medically determinable impairment involving plaintiff's knees or shoulders based on (1) the absence of x-ray findings supporting the diagnosis of diffuse osteoarthritis made by Donna Defreitas, M.D. in 2004, (2) the lack of documented complaints of shoulder or knee pain on any other occasion, and (3) the fact that plaintiff had not alleged an impairment involving his shoulders or knees.  (Tr. at 14-16.)  As for osteoarthritis in his back, plaintiff has not argued that his ability to perform work-related tasks was more limited due to osteoarthritis than it was by chronic lumbago.  Finally, the ALJ considered plaintiff's complaints of chest pain and shortness of breath but found no medical evidence of cardiovascular impairment or any other medical condition supporting such complaints.  (Tr. at 13.)  Again, plaintiff has not cited evidence to the contrary.

Accordingly, the court rejects plaintiff's argument that the ALJ erred at step two of the sequential evaluation by failing to consider all of plaintiff's impairments individually and in combination.

**II. Step Three:  Determining Whether the Criteria of Listing 12.05 Were Met**

At step three of the sequential evaluation, if a claimant demonstrates that he suffers from a severe impairment that is either listed in Appendix 1 of the regulations or equal to

a listed impairment, he will be found disabled without regard to his age, education, and work experience.  20 C.F.R. § 416.920(d).  The Listing of Impairments in Appendix 1 "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity."  20 C.F.R. § 416.92(a).  However, a claimant's impairment is not considered listed solely because he has the diagnosis of a listed impairment.  Rather, the impairment must satisfy all of the medical criteria of the listing.  20 C.F.R. § 416.925(d).  See also Sullivan v. Zebley, 493 U.S. 521, 530 (1990); Marcia v. Sullivan, 900 F.2d 172, 175 (9th Cir. 1990).

An impairment that is not listed in Appendix 1 may be found medically equivalent to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 416.926(a).  See also Tackett, 180 F.3d at 1099.  If a claimant has more than one impairment, and none of them meets or equals a listed impairment, the Commissioner must review the findings related to the claimant's impairments to determine whether the findings are of medical significance equal to those of a listed impairment.  Id.  See also Marcia, 900 F.2d at 175-76; 42 U.S.C. § 423(d)(2)(B); Social Security Ruling (SSR) 83-19 ("An impairment 'meets' a listed condition . . . only when it manifests the specific findings described in the set of medical criteria for that listed impairment.").

At issue here is Listing 12.05, titled "Mental Retardation," which provides as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. . . . ;
>
> B. . . . ;

/////

7

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>   1. Marked restriction of activities of daily living; or
>   2. Marked difficulties in maintaining social functioning; or
>   3. Marked difficulties in maintaining concentration, persistence, or pace; or
>   4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

In the present case, the ALJ determined at step two of the sequential evaluation that plaintiff's limited intellectual functioning is a severe impairment. (Tr. at 16.) At step three, the ALJ followed the procedures contained in 20 C.F.R. §§ 404.1520a and 419.920a to assess the severity of plaintiff's mental disorder. (Tr. at 17.) The ALJ found (1) no more than a mild restriction on activities of daily living, based on plaintiff's testimony that his activities are limited primarily due to physical disorders; (2) no difficulties in social functioning, based on plaintiff's testimony that he lives with other people, the lack of objective findings supporting Dr. Regazzi's assessment of moderate limitations in plaintiff's ability to relate to other people, and the absence of any documentation that plaintiff has difficulties getting along with other people or is unable to interact in a socially acceptable manner; (3) moderate limitations with regard to maintaining concentration, persistence, and pace, based on the IQ testing conducted by Dr. Regazzi, plaintiff's statements regarding his education, plaintiff's work history, his ability to perform simple domestic tasks, and the absence of any indication of a memory or concentration disorder or an impairment involving persistence or pace, over and above the limitations arising from plaintiff's limited intellectual functioning; and (4) no evidence in the record of repeated or extended episodes of decompensation or deterioration. (Tr. at 17.) On the basis of these criteria, the ALJ found that the 45-year-old plaintiff's mental impairments are severe but do not meet or

equal the requirements of any listed impairment. (Tr. at 17-18.) The ALJ considered Listing 12.05C but found no evidence to support a finding that plaintiff has mental retardation with deficits in adaptive functioning initially manifested before age 22. (Tr. at 18.)

Plaintiff argues that the regulation requires evidence demonstrating "or support[ing]" onset of the impairment before age 22. Plaintiff contends that the fact that he was retarded at age 43 supports the conclusion that he was retarded at age 22, because there is no injury or illness that could have rendered him retarded after age 22.

At step three, it is the claimant who bears the burden of proof. See Yuckert, 482 U.S. at 146 n.5. It was therefore plaintiff's burden in this case to establish the existence of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The ALJ's finding with regard to Listing 12.05C was not based solely on the absence of documentary evidence of onset before age 22. Rather, the ALJ cited plaintiff's "varying accounts of his early academic functioning," contradictory statements concerning special education classes, and, in particular, the fact that plaintiff's "adaptive functioning had been adequate for many years in the performance of relatively simple unskilled work." (Tr. at 18.) In light of such evidence, plaintiff's argument that he meets the requirements of Listing 12.05C is unpersuasive.

The court finds that substantial evidence supports the ALJ's determination at step three of the sequential evaluation, and the determination must be affirmed. See Sprague, 812 F.2d at 1229-30.

**III.  Step Four:  Finding Plaintiff Can Perform Past Relevant Work**

At step four, the ALJ is required to determine whether the claimant retains the residual functional capacity to perform his past work. A claimant's residual functional capacity is what the claimant can still do despite his limitations and is an assessment based upon all relevant evidence. 20 C.F.R. § 416.945(a); see also Mayes v. Massanari, 276 F.3d 453, 460 (9th

1  Cir. 2001).  It is the duty of the ALJ to determine a claimant's residual functional capacity from
2  the record.  20 C.F.R. § 416.946(c); see also Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir.
3  2001).  If the claimant is capable of performing past work, he is not disabled.
4  　　　　　Here, the ALJ found that plaintiff has the residual functional capacity to perform
5  unskilled light work involving no more than occasional climbing, balancing, stooping, kneeling,
6  crouching, or crawling, and no climbing of ladders, ropes, or scaffolds.  (Tr. at 18.)  The evidence
7  considered by the ALJ included the limitations assessed by two examining physicians as well as
8  the agency's reviewing physician, the temporary limitations assessed by a treating physician, the
9  examining psychologist's assessment of the severity of plaintiff's mental functioning, and
10 plaintiff's own testimony.  (Tr. at 18-19.)  The ALJ concluded that plaintiff was unable to
11 perform his past work as a dishwasher or a mover because those jobs involve lifting more than
12 20 pounds, but found that plaintiff can return to his past relevant work as a chore worker as he
13 performed that job.  (Tr. at 20.)
14 　　　　　The court finds that the ALJ considered all relevant evidence and reasonably
15 found plaintiff to have the residual functional capacity to perform unskilled light work, i.e., work
16 that requires little or no judgment to do simple duties that can be learned on the job in a short
17 period of time.  See 20 C.F.R. § 416.945.  The medical evidence of record is consistent with the
18 assessment that plaintiff is able to perform his past work as a chore worker as he performed the
19 job.  See Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (holding that, in order to
20 determine whether a claimant can perform his past relevant work, the ALJ must make "specific
21 findings as to the claimant's residual functional capacity, the physical and mental demands of the
22 past relevant work, and the relation of the residual functional capacity to the past work");
23 Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (finding the claimant's own testimony
24 about his past work highly probative); Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986)
25 (stating that the ALJ "must ascertain the demands of the claimant's former work and then
26 compare the demands with his present capacity").  The court finds that the ALJ's determination

is supported by substantial evidence and plaintiff did not carry his burden of proving that he is unable to perform his past relevant work as a chore worker. See Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

It must be noted that the court's scope of review in considering decisions granting or denying Social Security benefits is limited. See Hall v. Sec'y of Health, Educ. & Welfare, 602 F.2d 1372, 1374 (9th Cir. 1979) ("Congress has mandated a very limited scope of judicial review of the Secretary's decisions granting or denying Social Security disability benefits.")  It is not the court's role to re-weigh the evidence or substitute its own judgment for the Commissioner's. Winans v. Bowen, 853 F.2d 643, 644-45 (9th Cir. 1987).  Further, if there is conflicting evidence supporting a finding of either disability or nondisability, the ALJ may resolve the conflict between experts so long as there is "more than one rational interpretation of the evidence." Sprague, 812 F.2d at 1230.  See also Batson v. Comm'r, 359 F.3d 1190, 1193 (9th Cir. 2004) (holding that, "if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision").

Here, as a general matter, there is some evidence of disability.  However, there is substantial evidence of nondisability.  The ALJ considered all of the evidence and set forth his interpretation of that evidence in his decision.  The court finds the ALJ's interpretation of the evidence to be a rational one.  See Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.").  Thus, while perhaps a somewhat close case, in finding plaintiff capable of performing his past work as a chore worker the ALJ properly discharged his responsibilities of determining credibility and resolving any conflicts or ambiguities in the testimony.  See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  For this reason as well, the court is unpersuaded by plaintiff's challenge to the ALJ's residual functional capacity determination.

### IV. Step Five: Obtaining the Testimony of a Vocational Expert

The ALJ's determination that plaintiff could perform his past relevant work made it unnecessary for the ALJ to proceed to step five and determine whether plaintiff has the residual functional capacity to perform any other work. See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996). Therefore, plaintiff's argument concerning the need for the testimony of a vocational expert is unpersuasive.

### CONCLUSION

Accordingly, the court HEREBY ORDERS that:

1. Plaintiff's motion for summary judgment is denied;

2. Defendant's cross-motion for summary judgment is granted; and

3. The decision of the Commissioner of Social Security is affirmed.

DATED: March 20, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/fisher1977.order